UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ZEN-NOH GRAIN CORPORATION            CIVIL ACTION

VERSUS                                 NO: 12-2535

LISA JACKSON, ADMINISTRATOR,       SECTION: R(1)
UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY

**<u>ORDER AND REASONS</u>**

Defendant Lisa Jackson, administrator of the Environmental Protection Agency (EPA), moves to dismiss Zen-Noh's claim for lack of subject matter jurisdiction. For the following reasons, the EPA's motion is GRANTED.

**I.   FACTUAL BACKGROUND**

The Louisiana Department of Environmental Quality ("LDEQ") issued permits for the Nucor facility in Convent, Louisiana to manufacture pig iron and direct reduced iron. On June 25, 2010, Zen-Noh petitioned the EPA to object to the pig iron process permit. LDEQ modified both permits for the Nucor facility before the EPA objected, but Zen-Noh again petitioned the EPA to object to the new permits. The EPA granted Zen-Noh's petition on March 23, 2012, and objected to the permits. On June 21, 2012, the LDEQ responded to the EPA's objection, but has not yet revised its permits. Nor has the EPA terminated, modified, or revoked the permits.

Zen-Noh brought this suit against the EPA charging that it has failed to perform nondiscretionary duties under 42 U.S.C. § 7661d(b)(2) and (c) by failing to terminate, modify, or revoke Nucor's permits. Zen-Noh sues under section 304 of the CAA, which allows any person to bring an action against the EPA Administrator "where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator," and provides "district courts [with] jurisdiction . . . to order the Administrator to perform such act or duty." 42 U.S.C. §7604(a). The EPA contends that its obligations under 42 U.S.C. § 7661d(b)(2) and (c) are discretionary, and that this Court lacks subject matter jurisdiction over this case.

## II.  STANDARD

The Court must first determine whether the EPA's motion to dismiss is governed by Rule 12(b)(1) or Rule 12(b)(6). Federal Rule of Civil Procedure 12(b)(1) permits dismissal for lack of jurisdiction over the subject matter of the claim.  In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera-Montenegro v.*

2

*United States*, 74 F.3d 657, 659 (5th Cir. 1996). The party asserting jurisdiction bears the burden of establishing that the district court possesses jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not ordinarily prevent the plaintiff from pursuing the claim in another forum. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

When a defendant attacks the complaint because it fails to state a legally cognizable claim, Rule 12(b)(6) provides the appropriate challenge. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1960 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949.

**RULE 12(b)(1) APPLIES**

Suits against officials of the United States in their official capacities, including the EPA Administrator, are barred if there is no waiver of sovereign immunity. *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963). Section 7604(a)(2) waives sovereign immunity for claims "against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 42 U.S.C. § 7604(a)(2). The EPA argues that because § 7661d(b)(2) and (c) are discretionary duties, Zen-Noh's claim falls outside of the waiver of sovereign immunity outlined in § 7604(a)(2). Accordingly, it argues that this Court lacks subject matter jurisdiction. Zen-Noh argues that the EPA's motion goes to the merits of its claim because:

> Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.

*Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981); see also *Bell v. Hood*, 327 U.S. 678, 682 (1945).

The Fifth Circuit held that "[a] district court has jurisdiction under [section 7604(a)(2)] only if the plaintiff has alleged a duty which is not discretionary." *See Seabrook v. Costle*, 659 F.2d 1371, 1372-75 (5th Cir. Unit A Oct. 1981); *see also CleanCOALition v. TXU Power*, 536 F.3d 469, 473-74 (5th Cir.

4

2008) (affirming dismissal for lack of subject matter jurisdiction for claims brought under sections 7604(a)(1) and 7604(a)(3) of the CAA). Additionally, its decisions interpreting challenges to nondiscretionary duty claims under the APA analyze them under Rule 12(b)(1). *See Watson v. Chief Admin. Law Judge*, No. 10-40411, 2010 WL 4033991, at *2 (5th Cir. Oct. 15, 2010)(per curiam) ("Under the APA, there is no judicial review of agency action when that 'agency action is committed to agency discretion by law.'" (quoting 5 U.S.C. § 701(a)(2))). Accordingly, this Court will analyze the EPA's motion under Rule 12(b)(1).[1]

---

[1] Other courts addressing similar suits have held that whether a complaint alleges a nondiscretionary duty is determinative of the district court's subject matter jurisdiction. *See, e.g., Maier v. EPA*, 114 F.3d 1032, 1039 (10th Cir. 1997) (Clean Water Act citizen suit provision analyzed as a matter of jurisdiction); *Monongahela Power Co. v. Reilly*, 980 F.2d 272, 276 (4th Cir. 1992) ("Jurisdiction of the district court over this [section 7604(a)(2) suit] turns upon the question of whether the Administrator's challenged course of action violates a nondiscretionary duty imposed [by the CAA]."); *Fairview Twp. v. EPA*, 773 F.2d 517, 525 (3d Cir. 1985) (analyzing the citizen suit provision of the Federal Water Pollution Control Act and noting that "[d]istrict court jurisdiction over citizens' suits depends on the existence of a duty alleged to be nondiscretionary with the Administrator; if no nondiscretionary duty exists, then neither can a citizens' suit" (citing 33 U.S.C. § 1365(a))); *Am. Rd. & Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72, 81 (D.D.C. 2012) ("To invoke this court's jurisdiction under the citizen suit provision, a plaintiff must point to an act or duty under [the CAA] which is not discretionary."); *WildEarth Guardians v. Jackson*, No. 12-035BB/WPL, 2012 WL 3292974, at *2-4 (D.N.M. Aug. 2, 2012) (noting that section 7604(a)(2) "waives sovereign immunity for certain specific claims against the EPA"); *Sierra Club v. Leavitt*, 355 F. Supp. 2d 544, 547-48 (D.D.C. 2005) (analyzing a CAA claim under section 7604(a)(2) as dispositive of jurisdiction). *But see WildEarth Guardians v. Salazar*, 859 F. Supp. 2d 83, 96 n.11

## III. THE CLEAN AIR ACT

This case arises under the Clean Air Act (CAA), 42 U.S.C. §§ 7401-7671q (2006). The CAA aims to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." *Id.* § 7401(b)(1). In pursuit of this goal, the CAA provides a role for the EPA, the states, and public citizens themselves. The following is a brief overview of the respective roles of these three players.

The EPA sets national ambient air quality standards (NAAQS) for certain air pollutants. *Id.* § 7409(a)(1). The states submit plans to the EPA for achieving and maintaining these standards. *Id.* § 7407(a). State governors also designate areas within their states as: (1) nonattainment, if the area does not meet the standards; (2) attainment, if the area meets the standards; and (3) unclassifiable, if the area cannot be classified on the basis of available information. *Id.* § 7407(d). The facility at issue in

---

(D.D.C. 2012) (noting that a challenge to a claim under the citizen suit provision of the APA is analyzed under Rule 12(b)(6)); *Sierra Club*, 648 F.3d at 853-54 (addressing the inconsistency within the D.C. Circuit and holding under the APA "a complaint seeking review of agency action 'committed to agency discretion by law,' 5 U.S.C. § 701(a)(2), . . . should be dismissed under Rule 12(b)(6)); *WildEarth Guardians v. Salazaar*, No. 09-cv-1893, 2009 WL 6443120, at *3 (S.D. Tex. Dec. 7, 2009) (analyzing the Endangered Species Act and holding that citizen suits against the Administrator are a direct attack on the merits of plaintiff's case under Rule 12(b)(6).

this case is located in an area designated as attainment or unclassifiable for all NAAQS.

Further rules, known as the Prevention of Significant Deterioration Program (PSD), attach to areas designated as attainment or unclassifiable. The PSD requires facilities that emit air pollution in excess of certain thresholds to obtain a permit prescribing its emission limitations before it begins constructing or modifying a major stationary emission source. *Id.* §§ 7475(a), 7479(1).

As to facility operations, Title V of the CAA implements a nationwide system of operating permits. Title V makes it unlawful to operate major sources of air pollution "except in compliance with a permit issued by a permitting authority." *Id.* § 7661a(a); *see also Romoland Sch. Dist. v. Inland Empire Energy Ctr., LLC*, 548 F.3d 738, 741-42 (9th Cir. 2008). A permitting authority is the "air pollution control agency authorized by [the EPA] to carry out a permit program" in a state or local jurisdiction. 42 U.S.C. § 7661(4); *Sierra Club v. EPA*, 536 F.3d 673, 674 n.1 (D.C. Cir. 2008). The relevant permitting authority for this case is the Louisiana Department of Environmental Quality ("LDEQ").

While the state and local permitting authorities issue permits, the EPA has the opportunity to review proposed permits and object to them if "any permit contains provisions that are . . . not in compliance" with law. 42 U.S.C. § 7661d(a)(1), (b)(1).

7

If the EPA does not object, any person may petition the Administrator to object. *Id.* § 7661d(b)(2). The Administrator must object to the permit if the petitioner "demonstrates to the Administrator that the permit is not in compliance with the [CAA's] requirements." *Id.*

## IV. THE ADMINISTRATOR'S DUTIES ARE DISCRETIONARY

There are two settings in which the EPA objection process may arise. The first is if the EPA objects before the permitting authority issues a permit. In this setting, the permitting authority may not issue the permit before revising it to meet the objections. *Id.* § 7661d(b)(3). Section 505(c) provides that the permitting authority has 90 days to submit the revised permit. *Id.* § 7661d(c). If it does not, the EPA "shall issue or deny the permit in accordance with [Title V]." *Id.*

The second setting, and the one at issue here, involves cases in which the permitting authority has already issued a permit before it receives an objection from the EPA. In this setting, section 7661d(b)(3) provides:

> If the permitting authority has issued a permit prior to receipt of an objection by the Administrator under paragraph (2) of this subsection, the Administrator shall modify, terminate, or revoke such permit and the permitting authority may thereafter only issue a revised permit in accordance with subsection (c) of this section.

42 U.S.C. 7661d(b)(3). Next, section 7661(c) provides:

> If the permitting authority fails, within 90 days after the date of an objection under subsection (b) of this section, to submit a permit revised to meet the objection, the

8

> Administrator shall issue or deny the permit in accordance with the requirements of this subchapter. No objection shall be subject to judicial review until the Administrator takes final action to issue or deny a permit under this subsection.

42 U.S.C. 7661d(c).

Further, EPA regulations supplement these statutes and provide that if a permit has been issued before an EPA objection, the permitting authority has 90 days to resolve the objection. 40 C.F.R. § 70.7(g)(4). If the permitting authority fails to resolve the objection, the Administrator "will terminate, modify, or revoke and reissue the permit" after providing 30 days' notice to the permittee and providing the permittee an opportunity to comment on the Administrator's proposed action "and an opportunity for a hearing." *Id.* § 70.7(g)(5).

The merits of this motion turn entirely on whether the EPA's duties under sections 7661d(b)(2), 7661d(b)(3), and 7661d(c) are nondiscretionary duties. Here, LDEQ issued the permits before the EPA's objection, and Zen-Noh argues that these provisions impose a nondiscretionary duty on the EPA to modify, terminate, or revoke the permit. This Court determines that the duties at issue are discretionary for two reasons: (1) to be nondiscretionary the statute must provide an explicit deadline and (2) the regulatory framework provides the EPA discretion over when it acts. *See* discussion *infra* Parts IV.1-2.

**1.  A STATUTORY DEADLINE IS NECESSARY TO DISTINGUISH UNREASONABLE DELAY ACTIONS FROM NONDISCRETIONARY DUTY**

ACTIONS

a.   Overview

The statutory scheme of the CAA provides two distinct avenues for a citizen to compel agency action. The first is when the EPA has failed to fulfil a nondiscretionary duty. As explained below, nondiscretionary duties are statutory obligations with an explicit deadline for the EPA to act. The second avenue is to compel agency action unreasonably delayed. Unreasonable delay claims concern statutory obligations that give the EPA discretion over when it will act. The EPA's duties at issue fall into the second category of statutory obligations without an explicit deadline. These conclusions follow from a reading of the CAA's statutory and regulatory scheme.

b.   The CAA's Statutory Scheme

Section 7604 recognizes a cause of action for an agency's failure to perform a nondiscretionary duty, 42 U.S.C. § 7604(a)(2), and a cause of action to compel agency action unreasonably delayed. *Id.* § 7604(a). These are distinct causes of action: a claim alleging a failure to perform a nondiscretionary duty requires a plaintiff to give 60 days' notice, while a claim to compel agency action unreasonable delayed requires a plaintiff to give 180 days' notice. *Id.* § 7604(a), (b)(2). Further, unreasonable delay claims have their own venue requirement as they must be filed in a district court within the circuit in

10

which "such action would be reviewable under section 7607(b)." *Id.* § 7604(a).

Courts have developed a bright-line test to distinguish the two claims:

> When the administrator misses a statutorily-imposed deadline, his failure is not reviewed on a "reasonableness" basis. Only when a statute requires agency action at indefinite intervals, such as "from time to time", can "unreasonable delay" be a meaningful standard for judicial review. In contrast, when, as here, a statute sets forth a bright-line rule for agency action . . . there is no room for debate- congress has prescribed a categorical mandate that deprives EPA of all discretion over the timing of its work.

*Am. Lung. Ass'n v. Reilly*, 962 F. 2d 258, 263 (2d Cir. 1992) (citing *Sierra Club v. Thomas*, 828 F.2d 783, 791 (D.C. Cir. 1987)). In *Sierra Club*, the Court held that: "In order to impose a clear-cut nondiscretionary duty, we believe that a duty of timeliness must 'categorically mandat[e]' that *all* specified action be taken by a date-certain deadline." *Sierra Club*, 828 F.2d at 791 (citing *NRDC v. Train*, 510 F. 2d 692, 711 (D.D.C. 1974)). *Sierra Club* sets out a bright-line rule that has been echoed by other circuit courts interpreting the CAA. *See, e.g.*, *Maine v. Thomas*, 874 F.2d 883, 888 (1st Cir. 1989) (holding that for a duty to be nondiscretionary "the appropriate check is to ask when the duty must be fulfilled"); *NRDC v. Thomas*, 885 F.2d 1067, 1075 (2d Cir. 1989) (holding that a provision under the CAA requiring the Administrator to act "from time to time" is discretionary because of the absence of an explicitly listed

deadline); *see also Mountain States Legal Found. v. Costle*, 630
F.2d 754, 766 (10th Cir. 1980) ("Congress thus restricted
citizens's suits to actions seeking to enforce specific non-
discretionary clear-cut requirements of the Clean Air Act.")
(citing *Anaconda Co. v. Ruckelshaus*, 482 F.2d 1301 (10th Cir.
1973).[2]

The Fifth Circuit has not affirmatively adopted the *Sierra
Club* rule, but in *Seabrook*, a case predating *Sierra Club*, it
expressed the need for clear statutory language before finding a
nondiscretionary duty. *Seabrook* interpreted section 113 of the
CAA which provided that "[w]henever, on the basis of information
available to him, the Administrator finds that violations . . .
are so widespread. . . he shall notify the state." 42 U.S.C. §
7413. The Court held that this language did not impose a
nondiscretionary duty on the EPA to make such a finding:

> The language of neither § 113 nor any other section of the
> statute imposes a mandatory duty on the Administrator to
> make a finding every time some information concerning a
> possible violation of a SIP is brought to his attention. In
> the absence of a *clear statutory mandate*, we decline to
> impose such a duty on the administrator.

---

[2]     Some district courts have also emphasized that a
statute needs a bright-lined rule in order to constitute a
nondiscretionary duty. *See, e.g., Defenders of Wildlife v.
Browner*, 888 F. Supp. 1005, 1008 (D. Ariz. 1995) (finding a
provision of the Clean Water Act requiring the agency to act
"promptly" to be discretionary because "where timeliness is at
issue, statutory provisions which do not set bright-line
deadlines fall outside the reach of a citizen's suit") (citing
*NRDC*, 885 F.2d at 1075).

*Seabrook*, 659 F.2d at 1374 (emphasis added); *But see Manatee Cnty. v. Train*, 583 F.2d 179, 183-184 (5th Cir. 1978) (predating *Seabrook* and analyzing the Clean Water Act). As explained below, *Seabrook* supports the EPA's position that a bright-line rule is required for a statute to be nondiscretionary.[3] This Court agrees with the courts holding that an explicit deadline is necessary for a duty to be nondiscretionary under the CAA.[4]

There is no explicit or readily ascertainable deadline in sections 7661d(b)(2), 7661d(b)(3), or 7661d(c). The statute requires the Administrator to revoke, terminate, or modify the

---

[3]    *Seabrook* explicitly disagrees with *Wisconsin's Environmental Decade, Incorporated v. Wisconsin Power & Light, Incorporated*, 395 F. Supp. 313 (W.D. Wis 1975), a case relied on by Zen-Noh. The Court noted: "We think that the *Wisconsin Environmental* court's creation of a nondiscretionary duty which is not imposed by the statutory language pays too little heed to the doctrine of prosecutorial discretion." *Seabrook*, 659 F.2d at 1375.

[4]    Zen-Noh notes that some district courts dispute whether an explicit deadline is necessary for a duty to be nondiscretionary. These courts infer from the statutory text and structure that a duty is nondiscretionary. *See, e.g.*, *Sierra Club v. Johnson*, 500 F. Supp. 2d 936, 937 (N.D. Ill. 2007) (interpreting section 7661d(c) to be nondiscretionary because "we believe that 'shall' does not mean 'whenever,' and believe the statute is meaningless without a time frame."); *Raymond Proffitt Found. v. EPA*, 930 F. Supp. 1088, 1097 (E.D. Pa. 1996) (holding that an Administrator's duties under the Clean Water Act were nondiscretionary in part because of "Congress's use of 'shall'"); *Cross Timbers Concerned Citizens v. Saginaw*, 991 F. Supp. 563, 568-69 (N.D. Tex. 1997) (asserting skepticism that duties under the Clean Water Act do not require a readily ascertainable deadline to be nondiscretionary). None of these cases is controlling, and the Court does not find them persuasive on the issue presented.

permits, but it does not say when. An explicit deadline is important because it is the only way to distinguish between claims for failure to perform a nondiscretionary duty and claims for unreasonable delay. *See Am. Lung. Ass'n*, 962 F. 2d at 262-63. If section 7604(a)(2) could be invoked to compel agency action without an explicit deadline it would be indistinguishable from an action for unreasonable delay. *Id.* ("Only when a statute requires agency action at indefinite intervals, such as "from time to time", can "unreasonable delay" be a meaningful standard for judicial review").

Further, Zen-Noh's argument that Congress's use of "shall" in the statute renders it nondiscretionary fails to preserve the distinction between nondiscretionary duty suits and unreasonable delay suits. First, to invoke either the nondiscretionary duty cause of action or the unreasonable delay cause of action, the agency action must be mandatory. *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 n.1 (2004) ("[A] delay cannot be unreasonable with respect to action that is not required."); *Ctr. for Biological Diversity v. EPA*, 794 F. Supp. 2d 151, 156-57 (D.D.C. 2011) ("[A]n unreasonable-delay claim requires that the agency has a duty to act in the first place."). Accordingly, if a mandatory duty is all that is required to invoke section 7604(a)(2), there would be no substantive difference between nondiscretionary duty actions and unreasonable delay actions.

14

Zen-Noh has not cited to any authority compelling another conclusion.[5] Accordingly, the distinction between nondiscretionary duties and unreasonable delay claims under the CAA is preserved only by distinguishing between statutes that provide explicit deadlines from those that do not. The Administrator's duties do not have a date-specific deadline and are therefore outside of the scope of section 7604(a)(2).

Two district court cases have directly addressed this issue and have come to opposite conclusions. *Compare WildEarth*, 2012 WL 3292974, at *4-5 (holding that the Administrator's duties are discretionary for the purpose of section 7604(a)(2)), *with Johnson*, 500 F. Supp. 2d at 941 (holding that the Administrator's duties are nondiscretionary for the purpose of section 7604(a)(2)).

---

[5]     Zen-Noh relies on district court cases that support the EPA's argument. In *Raymond Proffitt*, the Court declined to apply the *Sierra Club* bright-line test to the Clean Water Act. It interpreted the use of "shall" in the statute to impose a nondiscretionary duty. Importantly, the Clean Water Act does not have the same venue distinctions between unreasonable delay cases and nondiscretionary duty cases. The Court noted:

> The *Sierra Club* court fashioned its rule as part of an attempt to distinguish between two court-bound avenues by which a citizen may travel to file a suit alleging unreasonable delay under the Clean Air Act. There is no reason to transport the *Sierra Club* rule into the much different context of a citizen's suit claim alleging violation of a nondiscretionary duty under [the Clean Water Act].

*Raymond Proffitt*, 930 F. Supp. 1088 at 1100-01.

This Court finds *WildEarth* persuasive. *Johnson* fails to take account of the regulatory procedures requiring the Administrator to provide the state 90 days to resolve the objection, provide the permittee with 30 days' notice, and provide the permittee with an opportunity for hearing. It also fails to consider the role of the unreasonable delay cause of action in CAA citizen suits. *Johnson's* concerns that "'shall' does not mean 'whenever'," and that "the statute is meaningless without a time frame" are unfounded. *Johnson*, 505 F. Supp. 2d at 938. "Shall" does not mean "whenever;" it means without unreasonable delay. It is the unreasonable delay cause of action that provides a meaningful time frame for this statute. *WildEarth*, 2012 WL 3292974, at *5 ("The "EPA itself concedes that its subject to an obligation to act within a reasonable time after the 90-day period expires, and that obligation can be enforced through the unreasonable delay provisions of Section 304(a).").[6] In sum, this

_____

[6]     Zen-Noh relies on other cases that are distinguishable. R. Doc. 19 at 9. Plaintiff's claims in *Center for Biological Diversity* were to compel actions for unreasonable delay and are therefore unhelpful to Zen-Noh's attempt to finding a section 7604(a)(2) nondiscretionary duty. *Ctr. for Biological Diversity*, 794 F. Supp. 2d at 153. In *American Canoe Association v. EPA*, 30 F. Supp. 2d 908 (E.D. Va. 1998), the Court found that the statute at issue did "offer such a readily-ascertainable deadline" under the *Sierra Club* standard. *Am. Canoe Ass'n v. EPA*, 30 F. Supp. 2d at 920-921 (noting that "[u]nder *Sierra Club v. Thomas*, a deadline need not be explicitly set out in a statute if its readily ascertainable by reference to a fixed time or event" and explaining that the Clean Water Act provided time-specific deadlines).
    *Sierra Club v. Leavitt* also found that the statute provided

16

Court refuses to fashion an explicit deadline into a statute that has none in order to recognize a redundant cause of action.

**2.  ZEN-NOH'S INTERPRETATION IS INCONSISTENT WITH THE EPA'S REGULATORY SCHEME**

The EPA's regulations are consistent with its interpretation that the statutes at issue provide it discretion over when to act. When the permitting authority issues a permit before an EPA objection, EPA statutes and regulations provide the permitting authority with 90 days to resolve the objection. 40 C.F.R. § 70.7(g)(4). If the permitting authority fails to resolve the objection, the regulations provide that the Administrator "will terminate, modify, or revoke and reissue the permit" after providing 30 days' notice to the permittee, providing the permittee an opportunity to comment on the Administrator's proposed action, and providing the permittee an opportunity for a hearing. 40 C.F.R. §§ 70.7(g)(5), 71.4(e). These provisions negate the idea that the EPA must immediately act on the permit after 90 days.

Zen-Noh argues that the EPA's notice of final rulemaking provides support for its argument that the Administrator's duty at issue is nondiscretionary. Zen-Noh relies on the following

---

an explicit deadline: "The words used in the regulation clearly indicate that the duty imposed on the Administrator is nondiscretionary, as it required the Administrator to prose a rule by July 1, 2003, and to finalize it within one year thereafter." *Sierra Club*, 355 F. Supp. 2d at 549.

passage from the notice to the final rule:

> The proposal required permitting authorities to suspend a
> permit if the Administrator objected to the permit as a
> result of a public petition under § 70.8(d). Upon further
> review, EPA now believes that this provision would not meet
> the requirements of section 505(b)(3) of the Act. The final
> rule states that upon EPA objection as a result of a
> petition and after the permit is issued, EPA shall modify,
> terminate, or revoke the permit. The permitting authority
> can thereafter issue a revised permit meeting EPA's
> objections. These provisions are as section 505(b)(3) of the
> Act stipulates and EPA has no discretion to do otherwise.

Operating Permit Program, 57 Fed. Reg. 32250-01, at *32290 (July
21, 1992). Zen-Noh derives two arguments from this passage.
First, it argues that because suspending the permit would not
comply with the statute, the statute must be mandatory. This is
correct because, as discussed above, "shall" does mean "shall."
But the mere existence of an obligation does not make it
nondiscretionary for the purpose of section 7604(a)(2). Neither
the EPA nor Zen-Noh disagrees that the Administrator must modify,
terminate, or revoke the permit at some point. Here, the EPA is
simply clarifying that a fourth option of suspending the permit
would contradict the statute's mandatory nature. Accordingly,
this first point does not help Zen-Noh.

Second, Zen-Noh argues that "upon" in the passage means that
the Administrator must modify, terminate, or revoke the permit
simultaneously with or immediately after its objection, or, at
the latest, 90 days after its objection. This argument
contradicts the final rule which provides that the EPA give the

state 90 days to resolve the objection, and provide the permittee

30 days' notice, as well as an opportunity for a hearing. The EPA

acknowledged these requirements:

> Section 70.8(d) provides that where EPA, in response to a
> public petition, has objected to a permit that has already
> been issued, EPA will modify, terminate, or revoke such
> permit. The final rule clarifies that EPA shall do so
> consistent with the procedures for reopening a permit for
> cause set forth in § 70.7(g)(4) or (5)(i) and (ii).

Operating Permit Program, 57 Fed. Reg. at *32290. Zen-Noh's

argument that "upon" means "immediately" is precluded by the

EPA's own regulations. There is simply no explicit deadline to be

found in either the notice or the rule itself. *See WildEarth*,

2012 WL 3292974, at *4-5 ("To state these additional procedures,

then, is to make apparent that there cannot be a date-certain

deadline for EPA's decision to deny or revoke the permit."").

Accordingly, Zen-Noh's interpretation is inconsistent with these

procedures.

Zen-Noh's last attempt to work around the EPA's procedures

is to argue that they must give way because: "To the extent that

a regulatory process frustrates or renders meaningless a

Congressional statutory mandate, it must yield to Congress's

will." *Avenal Power Ctr. v. EPA*, 787 F. Supp. 2d 1, 4 (D.D.C.

2011). *Avenal*, however, dealt with an explicit statutory

deadline. The statute at issue required the EPA to grant or deny

specific permits within one year, and the Court held that: "while

the Administrator is welcome to avail herself of whatever

assistance the EAB can provide her *within the one-year statutory period*, she cannot use that process as an excuse, or haven, to avoid statutory compliance." *Id.* As discussed above, there is no explicit deadline in the statutes at issue. Accordingly, the EPA regulations are consistent with the statute and are not overriding any statutory deadline.

Accordingly, because the Administrator's duties are discretionary for the purposes of section 7604(a)(2), this Court lacks subject matter jurisdiction over this matter.[7]

**V.    CONCLUSION**

The EPA's motion to dismiss for lack of subject matter jurisdiction is GRANTED. There is no applicable waiver of the federal government's sovereign immunity. Zen-Noh's claims are dismissed for lack of jurisdiction.


New Orleans, Louisiana, this 30th day of April, 2013.


_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[7]     Zen-Noh argues that the recent LDEQ response does nothing to moot its claims. The EPA does not argue that the LDEQ's response terminates its obligations; accordingly, the LDEQ's response is not relevant to this Court's decision. R. Doc. 19 at 16-17.